UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

University Physician Group,

    Plaintiff,

v.                                                  Case No. 13-13167

AAUP-AFT, Local 6075, AFL-CIO,      Sean F. Cox
Wayne State University Chapter,         United States District Judge

    Defendant.
_____/

## OPINION & ORDER

This matter involves a dispute as to whether a certain grievance is subject to a narrow arbitration clause contained in a Settlement Agreement. The matter is before the Court on Plaintiff's Motion for Declaratory Judgment. The parties have briefed the issues and the Court heard oral argument on October 24, 2013. For the reasons set forth below, the Court shall GRANT Plaintiff's Motion for Declaratory Judgment and rule that the grievance at issue, and others like it, are not subject to arbitration under the parties' Settlement Agreement dated September 13, 2012.

## BACKGROUND

**A.    Factual Background**

The underlying facts are not in dispute. Plaintiff University Physician Group ("Plaintiff" or "UPG") is a private, non-profit corporation which employs physicians to provide clinical services. (Compl. at ¶ 7).

Defendant AAUP-AFT, Local 6075, AFL-CIO, Wayne State University Chapter

1

("Defendant" or "the Union") is a labor organization which represents teaching faculty employed by Wayne State University ("the University"). (Compl. at ¶ 2; Answer at ¶ 2).

UPG separately employs many of the same physicians who serve on the teaching faculty at the University's School of Medicine. (Compl. at ¶ 8).

In 2009-2012, the Union and the University were parties to a collective bargaining agreement (a new agreement is now in place through March 20, 2021)." (Compl. at ¶ 9; Answer at ¶ 9). UPG is and was not a party to any collective bargaining agreements and the Union has never been elected as the bargaining representative for physicians employed by UPG. (Compl. at ¶ 11; Answer at ¶ 11).

On or about August 27, 2010, the Union brought a grievance against the University in which the Union alleged that "[s]ince on or about May 4, 2010, and continuing to date, Administrators in the [University's] School of Medicine have without just cause disciplined members of the [School of Medicine] faculty." (Compl. at ¶ 10; Answer at ¶ 10).

Although UPG is not a party to any collective bargaining agreements with the Union, in March of 2011, the Union filed an "unfair labor practice charge before the Michigan Employment Relations Commission ('MERC') in which the Union named both the University and UPG as parties. The Union named UPG in the charge as an alleged "alter ego, co-employer or agent" of the University. (Compl. at ¶ 12; Answer at ¶ 12). In that charge, the Union claimed, among other things, that the University and UPG refused to bargain over the contractual grievance procedure contained in the 2009-2012 collective bargaining agreement between the University and the Union. (Compl. at ¶ 13; Answer at ¶ 13).

The dispute arose after UPG issued disciplinary action against one of its employees who

was acting in his capacity as a UPG employee[1] (the employee was separately employed by the University). (Compl. at ¶ 14; Answer at ¶ 14). The Union claimed that the grievance procedure contained in the collective bargaining agreement between the Union and the University applied to the disciplinary action given to the UPG employee. (Compl. at ¶ 15; Answer at ¶ 15). UPG contested the jurisdiction of MERC in the unfair labor practice charge. (Compl. at ¶ 16; Answer at ¶ 16).

Before any hearing on the merits, the named parties (UPG, the University, and the Union), entered into a private Settlement Agreement on September 13, 2012. (Compl. at ¶ 17; Answer at ¶ 17). Under that Settlement Agreement, the parties established a grievance procedure under which a UPG physician employee could appeal disciplinary actions to arbitration. (Compl. at ¶ 18; Answer at ¶ 18). That grievance procedure is wholly separate and distinct from the grievance procedure contained in the collective bargaining agreement between the Union and the University. (Compl. at ¶ 19; Answer at ¶ 19).

The grievance procedure contained in the Settlement Agreement provides, in relevant part:

> Effective with the signing of this Agreement, **UPG recognizes the Union as the representative of UPG employees only to the extent of utilizing the attached Grievance Procedure in instances in which such employees have received disciplinary action from UPG** and the employee desires to use that process. **For these purposes, discipline does not include the non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual employment contract.** No other bargaining obligation between the parties is imposed or implied by the terms of this Agreement, with any such obligation being expressly waived.

---

[1] The Union denies that the employee was "acting solely in his capacity as a UPG employee." (Answer at ¶ 14).

(Compl. at ¶ 2; Answer at ¶ 2; Settlement Agreement) (emphasis added).

Through that Settlement Agreement, UPG did not become a party to the collective bargaining agreement between the Union and the University. (Compl. at ¶ 21; Answer at ¶ 21). Further, the Union agreed that its representation of UPG physicians would only be sought by way of an election through the National Labor Relations Board or the MERC (an act the Union has not attempted). (Compl. at ¶ 22; Answer at ¶ 22).

Many physicians employed by UPG have individual employment agreements with UPG. (Compl. at ¶ 23; Answer at ¶ 23). Included in UPG's employment agreement is a clause providing for termination of the Agreement with notice. In Section 4.02(d), the employment agreement provided as follows: "d) Termination Without Cause. Either party may terminate this Agreement, without cause, upon 60 days written notice to the other party." (Compl. at ¶ 25; Answer at ¶ 25).

On April 19, 2013, UPG informed Dr. Chaturvedi that his employment would be terminated in 60 days, without cause, pursuant to the terms of his employment agreement. On May 3, 2013, Dr. Chaturvedi also submitted a letter of resignation to UPG regarding only his employment with UPG. On or about May 16, 2013, the Union nevertheless filed a grievance over the termination of Dr. Chaturvedi's employment with UPG (hereinafter "Grievance No. 1"). On July 9, 2013, the Union requested to take Grievance No. 1 to arbitration under the Settlement Agreement. The Settlement Agreement permits grievances and arbitration only of "disciplinary action" and expressly excludes from that process any "non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual employment contract." (Compl. at ¶¶ 26-30; Answer at ¶¶ 26-30).

B.      **Procedural Background**

On July 24, 2013, Plaintiff UPG filed a Complaint for Declaratory and Injunctive Relief against the Union. The Complaint contains two counts: "For Declaratory And Injunctive Relief Under The Federal Arbitration Act" (Count I); and "For Declaratory And Injunctive Relief Under The Labor Management Relations Act" (Count II). UPG asks this Court to "issue a judgment declaring that Grievance No. 1 and all other grievances arising from "the non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual employment contract," are not arbitrable, enjoining the Union from further pursuing arbitration of such grievances, and awarding such other relief as the Court deems just and proper." (Compl. at 7-9).

On July 25, 2013, UPG filed a Motion for Declaratory Judgment. (Docket Entry No. 8). On that same date, July 25, 2013, UPG filed a Motion for Preliminary Injunction. (Docket Entry No. 6). The parties later stipulated to dismissal of the Motion for Preliminary Injunction without prejudice. (Docket Entry No. 19).

On August 13, 2013, the Union filed an Answer and Counterclaim. (Docket Entry No. 14). The Counterclaim is untitled but is a mirror-image of UPG's request for declaratory relief, requesting "that the Court issue an order directing the Plaintiff to engage in binding arbitration of Grievance No. 1 regarding Dr. Seemant Chaturvedi, and such other relief as the Court deemed just and proper." (Counter-Complaint at 8).

## ANALYSIS

In this declaratory action , the Union requests that this Court compel UPG to arbitrate Grievance No. 1, while UPG asks the Court to declare that Grievance No. 1, and others like it, are not subject to arbitration.

The Sixth Circuit has explained that "[t]he guiding principles for determining whether a grievance is arbitrable are well established: (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakenly provide otherwise, whether [an agreement] creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration cause is not susceptible of an interpretation that covers the asserted dispute." *United Steel Workers of America v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994). "Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitration 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id*. (citations omitted).

**A.** **This Court, Rather Than An Arbitrator, Decides The Question Of Arbitrability**

It is well-established that "unless the parties clearly and unmistakenly provide otherwise," whether an agreement "creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination." *United Steel Workers of America*, 21 F.3d at 131 (citing *AT&T*

*Technologies, Inc. v. Communication Workers*, 475 U.S. 643 (1986)). "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'questions of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84 (2002); *see also Armco Employees Ind. Fed. v. AK Steel Corp*., 252 F.3d 854, 858 (6th Cir. 2001) (The court is "limited to determining substantive arbitrability only – that is, which subjects the parties have agreed to arbitrate, according to the terms of their CBA.").

"If a court decides that the subject matter is properly arbitrable, then potential procedural bars to arbitration are matters for the arbitration itself." *Armco*, 252 F.3d at 859. "[C]ourts determine only *substantive* arbitrability while arbitrators determine *procedural* arbitrability." *Id*. (emphasis added). Issues of procedural arbitrability include "whether prerequisites such as *time limits*, notice, latches, estoppel, and other conditions precedent to an obligation to arbitrate have been met." *Howsam,* 537 U.S. at 592 (emphasis in original).

Seeking to avoid having this Court decide the issue of arbitrability, the Union asserts that this is a procedural issue to be determined by the arbitrator, not the Court, and that the Court should leave the issue for the arbitrator "or otherwise it must decide the merits of the grievance." (Union's Br. at 10).

The Union frames the issue in a contorted manner, asserting that "the issue in this case is whether or not Dr. Chaturvedi was disciplined and if he may be take the grievance to arbitration." (Union's Br. at 7). In doing so, the Union argues that "[w]hether Dr. Chaturvedi was [d]isciplined by UPG is a [c]ondition [p]recedent to [i]nvoke the [g]rievance and [a]rbitration [p]rocedure and is [t]herefore a [p]rocedural [q]uestion [r]eserved for the [a]rbitrator." (*Id*.). The Union asserts that "[t]he issue of whether the 'no cause' clause was used to discipline is the

7

exact type of procedural issue the Court reserves for the arbitrator." (*Id*. at 8).  Nevertheless, the Union has not directed the Court to any authority supporting its position.

UPG, on the other hand, has directed the Court to several analogous cases – all of which have concluded that the determination at issue here is a matter of arbitrability for the Court to decide.  *See, e.g., United Mine Workers of America v. Chris-Craft Corp*., 385 F.2d 946 (6th Cir. 1967).

In *Chris-Craft Corp.*, the collective bargaining agreement prohibited strikes, sit-downs, and boycotts and expressly provided that any violation of that provision may be the subject of disciplinary actions, including discharge, and such disciplinary actions may not be raised as a grievance.  *Id*. at 948-49.  Four employees participated in a prohibited work stoppage and were discharged.  They filed grievances, alleging that the employer discriminatorily applied a power expressly reserved to it in the agreement, and filed suit to compel the employer to arbitrate those grievances.  The district court held that the employees were not entitled to arbitrate their grievances and the Sixth Circuit affirmed.  In doing so, the court explained that the disputes at issue were "expressly excluded from the arbitration procedure" and that "[w]hen, as in this case, a subject is specifically excluded from the arbitration procedure, we are not free to ignore the plaint wording of the agreement between the parties." *Id.* at 949-50.  The Sixth Circuit further explained that:

> Generally the Courts will not inquire into the factual circumstances of a dispute because under the standard arbitration clause to do so would be to consider the merits in an area reserved exclusively to the arbitrator by the agreement.  But in the instant agreement we do not have a standard arbitration clause; and it is the agreement that circumscribes the inquiry of the Court. *United Steelworkers of America v. Enterprise Wheel & Car Corp*., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).  The Appellants' argument fails to

> comprehend that under the instant contract the Court can only compel arbitration of disputes over working conditions, layoffs, or discharges and in that area cannot compel arbitration of discharges for violation of the no-strike clause. In order to perform its function in applying the provisions of the contract, the Court must determine that a discharge occurred. After such a determination, the Court must then inquire as to the cause of the discharge and determine from the agreement if the discharge is a matter for arbitration. Such a determination necessarily entails some limited inquiry into the factual circumstances surrounding the discharge. The District Court made the proper inquiry and found that the discharges were not a matter for arbitration. We agree with that finding.

*Id*. at 950.

Accordingly, as recognized in a more recent case, "[t]he narrow arbitration provision in *Chris-Craft* required the court to make a limited inquiry to determine whether the subject of the grievance was discharge, as claimed by the union, or discipline for violation of the no-strike clause, as claimed by the employer, a matter expressly excluded from arbitration by the agreement." *United Steelworkers of America v. Timken Co.*, 717 F.2d 1008, 1014 (6th Cir. 1983).

Here too, the determination is for the Court to make and the Court may make a limited inquiry to determine whether the subject of the grievance is a matter expressly excluded from arbitration by the terms of the agreement.

B.  **The Settlement Agreement Does Not Contain A Broad Arbitration Clause.**

One of the guiding principles is that "where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration cause is not susceptible of an interpretation that covers the asserted dispute." *United Steel Workers of America v. Mead Corp.*, 21 F.3d at 131. "Moreover, in cases involving broad

arbitration clauses the Court has found the presumption of arbitration 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id*. (citations omitted).

Before applying such a presumption, this Court must consider whether the arbitration provision in the Settlement Agreement "is the type of broad clause to which the presumption is particularly applicable." *United Steelworkers of America v. Mead*, 21 F.3d at 132.

As discussed in *Mead*, the Sixth Circuit has found the presumption of arbitrability applicable in cases where the arbitration provision clause: 1) provides for "arbitration of *any* controversies regarding interpretation of the contract;" 2) covered "matter[s] involving the interpretation or application of, or compliance with *any* of the terms of this Agreement;" or 3) subjects *any* unresolved grievance to arbitration. *Id*. at 132. (emphasis added).

Conversely, the arbitration provision in *Salary Policy Employee Panel v. Tennessee Valley Auth.*, 868 F.2d 872 (6th Cir. 1989) was found not to be broad where "the arbitration clause was carefully drawn to be exclusive rather than inclusive." *Id*. at 877. The Court explained:

> Far from providing for arbitration of "any" differences arising with respect to the performance of "any" obligation under the contract, the arbitration clause that is before us in this case begins by saying that "*[o]nly* a grievance which involves a disciplinary action," or *only* a grievance which involves " a claim of misapplication or misinterpretation of an express claim provision in a supplementary agreement" is arbitrable.

*Id*. (emphasis added by the Court).

Like the arbitration provision in *Salary Policy Employee Panel*, the arbitration provision

10

in the Settlement Agreement was drawn to be exclusive rather than inclusive. It provides:

> Effective with the signing of this Agreement, UPG recognizes the Union as the representative of UPG employees **only to the extent** of utilizing the attached Grievance Procedure **in instances in which such employees have received disciplinary action from UPG and the employee desires to use that process. For these purposes, discipline does not include the non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual employment contract. No other bargaining obligation between the parties is imposed or implied by the terms of this Agreement, with any such obligation being expressly waived.**

(Compl. at ¶ 2; Answer at ¶ 2; Settlement Agreement at ¶ 1) (emphasis added).

Thus, the arbitration provision is not the type of broad clause to which a presumption of arbitration is applicable.

C. **The Settlement Agreement Includes An Express Provision Excluding The Grievance At Issue.**

Like the situation in *Salary Policy Employee Panel*, the narrow arbitration provision at issue here puts in play another one of the guiding principles – that arbitration is a matter of contract and that a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Salary Policy Employee Panel*, 868 F.2d at 877-78 (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986)).

That is, if the agreement at issue "does not affirmatively provide for arbitration of a given type of grievance, the grievance simply is not arbitrable." *Id*.

Here, the agreement provides that the grievance procedure will only be used "in instances in which such employees have received disciplinary action from UPG" and expressly states that "[f]or these purposes, discipline does not include the non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual

employment contract."  (Settlement Agreement at ¶ 1).

Thus, the Settlement Agreement includes an express provision excluding the grievance at issue here (i.e., a grievance based on the non-renewal or termination of a contract by UPG) from arbitration.  This is a situation where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steel Workers of America v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994).  The Court shall grant UPG's Motion for Declaratory Relief and shall grant its request that the Court "issue a judgment declaring that Grievance No. 1 and all other grievances arising from 'the non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual employment contract,' are not arbitrable, [and] enjoining the Union from further pursuing arbitration of such grievances."  (Compl. at 7-9).

In addition, for these same reasons, the Court shall DENY the Union's Counterclaim, which asks the Court to declare that UPG must engage in binding arbitration of Grievance No. 1.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion for Declaratory Judgment is GRANTED and this Court shall issue a Declaratory Judgment declaring that Grievance No. 1, and all other grievances arising from "the non-renewal of an individual employment contract or the termination of such a contract by UPG with the notice required by that individual employment contract," are not arbitrable under the parties' Settlement Agreement dated September 13, 2012, and enjoining the Union from pursuing arbitration of such grievances.

IT IS FURTHER ORDERED that the Union's Counterclaim, which asks the Court to declare that UPG must engage in binding arbitration of Grievance No. 1, is DENIED WITH

PREJUDICE.

    IT IS SO ORDERED.

                                      S/Sean F. Cox
                                      Sean F. Cox
                                      United States District Judge

Dated: October 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 28, 2013, by electronic and/or ordinary mail.

                                      S/Jennifer McCoy
                                      Case Manager